UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JOHN WATERBURY,

                  Plaintiff,

       vs                                    1:03-CV-1492

LIBERTY LIFE ASSURANCE COMPANY
OF BOSTON,

                  Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                        OF COUNSEL:

DeGRAFF FOY KUNZ & DEVINE LLP        CHARLES R. SCHWARTZ, ESQ.
Attorneys for Plaintiff
90 State Street
Albany, New York 12207

BOND, SCHOENECK & KING, PLLC         WILLIAM E. REYNOLDS, ESQ.
Attorneys for Defendant
111 Washington, Avenue
Albany, New York 12210-2280

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

        Plaintiff John Waterbury ("Waterbury" or "plaintiff") brings suit against defendant Liberty Life Assurance Company of Boston ("Liberty") challenging Liberty's denial of long-term disability benefits. Pursuant to Fed. R. Civ. P. 56, defendant moves for summary judgment and plaintiff opposes. Plaintiff cross-moves for summary judgment and defendant opposes. The motions were considered on submit without oral argument.

## II. **FACTS**

Plaintiff worked for FleetBoston Financial Corporation and purchased a disability insurance policy through his employer which was written and administered by Liberty. The policy provides for the payment of long-term disability benefits when plaintiff can demonstrate that he is disabled. Disabled is defined as being "unable to perform all of the material and substantial duties of his occupation on an Active Employment basis because of an Injury or Sickness." (Docket No. 15, McGee Aff. Ex. Administrative Record, p. 6) ("Admin. Rec. at __".)

Plaintiff was employed in a management position as a Development Team Leader. (Admin. Rec. at 348.) While there is some dispute as to the exact requirements of the job, it is sedentary in nature. Plaintiff describes the position at the time of his injury as follows:

> I was sitting anywhere from 10-14 hours per day 4 days per week and approximately 4-6 hours two days per week. During most of this time I am hosting meetings that last from 1.5 to 3 hours in length. I may have from one to three meetings per day. In between those times is when I prepare for the next meeting, prepare deliverables from meetings served and answer phone calls.

Id. at 296. Defendant describes the position after evaluation by a vocational consultant as follows: "[the] occupation is sedentary in nature and allows for the ability to change positions, as needed, throughout the day." Id. at 53. During the performance of his job plaintiff

> - Provides leadership and supervision to systems staff in support of the daily production environment and project assignments.
> - Provide[s] technical guidance to the team in areas relating to service level agreements; problem resolution.
> - Assists management in effective resource, financial and operational management.

Id. at 327.

According to plaintiff, on June 24, 2002, he twisted while sitting in a chair at a work meeting and felt a "popping" in his back. Id. at 221-22. He sought treatment from his chiropractor, Dr. Micheal Adamec, and continued to work until October 28, 2002. Id. at 454. 456) In November, he was granted short-term disability benefits. Id. at 458.

On November 8, 2002, plaintiff underwent surgery to treat a left-side disc herniation. Id. at 460. Plaintiff's doctor, Dr. Phillip Marra, provided Liberty with regular reports of plaintiff's recovery and disability status. Id. at 413, 416. On December 4, 2002, Dr. Marra reported that the disability was temporary and listed February 11, 2003 as an estimated return to work date. Id. at 413. Liberty continued plaintiff's short-term benefits throughout this time period.[1]   Id. at 412.

On January 7, 2003, Dr. Marra reported that plaintiff was recovering in a satisfactory fashion from the surgery with "complete resolution of the leg pain", that he should continue physical therapy, and he would see him again in a month. Id. at 400. Plaintiff saw Mr. Marra in February and the parties continued to correspond regarding the need for the regular receipt of medical information to maintain a disabled status.   Id. at 371, 361.

On March 12, 2003, Dr. Donald Davis, a neurosurgeon, performed an Independent Medical Examination ("IME") at Liberty's request. Id. at 220. Dr. Davis acknowledged plaintiff's complaints and some level of disability. He explained that

> [Waterbury] has an underlying pathological condition, namely lateral recess stenosis and the incident on 6/24/02, was an aggravation of that pre-existent condition. Certainly the claimant's

---

[1] With periodic extensions, short-term disability benefits were paid from October 2002 through April 28, 2003. (Admin. Rec. at 77 (error in year of date corrected.))

>pain as of the incident in June 2002, and the present picture of
>pain, is consistent with the pre-existent recess stenosis and the
>aggravative factor, which occurred in twisting on 6/24/02.

Id. at 221. Even considering this condition, Dr. Davis concluded that plaintiff could function in "a sedentary job description and . . . [could] return to the workplace and function in that capacity." Id. at 221. He recommended that plaintiff participate in a Functional Capacity Evaluation ("FCE") "to find out just exactly what Mr. Waterbury could do within the framework of the workplace." Id.

In March, plaintiff consulted with Dr. Avinder Singh, the Medical Director at Diagnostic and Interventional Pain Management and Rehabilitation Services, for help with pain management. Id. at 351. Dr. Singh noted that "[t]he benefit of surgery was only for four weeks . . . his chronic pain has not changed." He concluded as follows:

>Physical and Rehabilitation will be necessary. Vocational Rehab
>would be necessary and when we get there we will talk more
>about that. This is a very complex case currently in moderate to
>severe disability and progress will depend on how he responds
>and how bad is the disc derangement.

Id. at 354.

On a form dated March 31, 2003, Dr. Marra noted that plaintiff was totally disabled as to his regular occupation and he was unable to determine a date that plaintiff might be able to return to work. He suggested that plaintiff participate in an FCE. Id. at 377. Dr. Marra examined plaintiff on April 1. He recorded the following comment on the visit:

>Mr. Waterbury has residual lower back pain following lumbar
>laminectomy and discectomy . . . Unfortunately his pain has failed
>to resolve completely. He feels he is much better than he was
>prior to surgery but he still feels he cannot work and he doesn't
>feel he can sit for any length of time either. . . I believe he is
>capable of a sedentary type of work. He is however temporarily

>disabled with a partial and moderate disability. He will follow up
>with me in six weeks.

Id. at 350.

Dr. Marra completed a Physical Capacities form and a Restrictions form provided by Liberty, dated April 8, 2003. On the Physical Capacities form Dr. Marra noted that plaintiff could perform periodic sitting and standing, no lifting and could not work eight hours per day. Id. at 375. On the Restrictions form, the estimated return date was filled in as "undetermined" and it was explained that after surgery, "recovery was progressing until mid-January when pain and problems [not legible]." Id. at 374.

Surveillance was conducted in April, but revealed only that plaintiff spoke on the porch on the telephone and that he was without any visible brace or other means of orthopedic support. Id. at 228-29.

On April 22, 2003, plaintiff participated in a FCE performed by VerNova, Inc. Id. at 303. The physical therapist who performed the test concluded

>Mr. Waterberry demonstrated the ability to perform occupations in
>the medium category per the Dictionary of occupational Titles, VI
>Edition, Vo. 2, Revised 1991. . . Although it is felt that Mr.
>Waterberry can sit and stand on an occasional basis, these
>activities should be broken up throughout the day, with sitting and
>standing limited to no more than 20 to 30 minutes at a time
>without a brief change of position. He had no limitations.

Id. at 303-04.

On May 13, 2003, Liberty denied plaintiff's claim for long-term disability benefits. Id. at 326. The denial was based on the results of the FCE, the IME conducted by Dr. Davis, Dr. Singh's March 19 evaluation, and the fact that it appeared that plaintiff had not seen Dr. Marra since February, didn't have another appointment scheduled, and was attending physical therapy. Id. at 327.

June 6, 2003 plaintiff appealed the denial of benefits. Id. at 293. Plaintiff challenged the reasoning of the determination but did not attach additional evidence of his medical condition. Id. at 274. Liberty explained that it would accept additional records for consideration though July 30, 2003.

In consideration of the appeal, Liberty had the claim file reviewed by Dr. Gale Brown who issued a report dated August 6, 2003. Id. at 247. Dr. Gale reviewed plaintiff's medical records, diagnostic test reports, plaintiff's job description and the video surveillance. Dr. Brown found that plaintiff's symptoms did not correlate with the physical exams and diagnostic evidence. Id. Acknowledging the FCE results, Dr. Brown recommended:

- Position changes every 20 to 30 minutes as necessary for comfort
- No frequent to constant bending and twisting at waist level.
- No lifting or carrying beyond that demonstrated on FCE 4/22/03

Id. at 248. She noted that plaintiff's sedentary job allowed for such position changes at will. Dr. Brown discounted Dr. Marra's work limitations as excessive and inconsistent with the FCE. Dr. Singh's restrictions were noted as consistent with sedentary work but not sufficiently supported to the extent that they precluded an eight-hour work day. Id.

Dr. Brown concluded that plaintiff

does not have residual neuromuscular impairment necessitating specific physical restrictions that preclude him from resuming the essential duties of his own sedentary occupation on a full-time basis, effective 4/22/03 [the date of the FCE] and beyond. Mr. Waterbury's self-reported limitations and symptomatic complaints are not supported by the clinical and functional evidence reviewed.

After the report, plaintiff submitted MRI findings. Id. at 232. Dr. Brown reviewed the submissions but did not alter the opinions expressed in the previous report. Id. at 230. She acknowledged that the tests provided evidence of epidural scarring but reiterated that the

appropriate restrictions to accommodate the effects of the scarring are possible in his particular job as per her previous recommendations. Id.

By letter dated August 19, 2003, Liberty maintained its determination that plaintiff was not disabled within the policy definition and denied the administrative appeal. Id. at 48-54. That decision, which relied heavily on Dr. Brown's analysis, addressed the same medical evidence noted in the initial denial with the addition of Dr. Brown's opinions, and the submitted MRI information. The instant action followed.

## III. DISCUSSION

### A. Summary Judgment Standard

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Richardson v. N.Y. State Dep't of Correctional Servs., 180 F.3d 426, 436 (2d Cir. 1999). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

Once the moving party has met the initial burden of demonstrating the absence of a genuine issue of material fact, however, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56; Anderson, 477 U.S. at 250. At that point, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec., 475 U.S. at 586. Indeed, to withstand a summary judgment motion, the nonmoving party must demonstrate

that sufficient evidence exists upon which a reasonable jury could return a verdict in its favor. Anderson, 477 U.S. at 248-49; Matsushita Elec., 475 U.S. at 587.

### B. Standard of Review under ERISA

ERISA is silent as to the standard of review to be applied to administrators' benefit determinations. Celardo v. GNY Auto. Dealers Health & Welfare Trust, 318 F.3d 142, 145 (2d Cir. 2003). The Supreme Court, however, has held that challenges to denials of benefits are "to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S. Ct. 948 (1989). "Where a written plan confers upon an administrator the discretionary authority to determine eligibility, a court must view its decisions with a 'strong measure of deference' and may reverse only if the administrator's ultimate conclusions are 'arbitrary and capricious.'" Armstrong v. Liberty Mut. Life Assur. Co., 273 F. Supp. 2d 395, 402 (S.D.N.Y. 2003) (quoting Pagan v. NYNEX Pension Plan, 52 F.3d 438, 441 (2d Cir. 1995)). The parties do not dispute that the arbitrary and capricious standard applies in the instant case.

"Because review in this context is limited to the record before the administrator at the time of decision, however, 'the district court sits in effect an as appellate court to determine whether the denial of ERISA benefits was arbitrary and capricious.'" Henar v. First Unum Life Ins. Co., No. 02-CV-1570, 2002 U.S. Dist. LEXIS 17585, 13-14 (S.D.N.Y. Sept. 19, 2002) (quoting Rizk v. Long Term Disability Plan of the Dun & Bradstreet Corp., 862 F. Supp. 783, 791 (E.D.N.Y. 1994). A decision or interpretation is arbitrary and capricious if it is "without reason, unsupported by substantial evidence or erroneous as a matter of law." Pagan, 52 F.3d at 442. The administrator's decision is reviewed to determine whether it "was

based on a consideration of the relevant factors and whether there has been a clear error of judgment." Armstrong, 273 F. Supp. 2d at 403 (citing Jordan v. Retirement Comm. of Rensselaer Polytechnic Inst., 46 F.3d 1264, 1271 (2d Cir. 1995)).  "'Substantial evidence' is 'such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [decision maker and] requires more than a scintilla but less than a preponderance.'" Id. (citing Miller v. United Welfare Fund, 72 F.3d 1066, 1072 (2d Cir. 1995)).

### C. Liberty's Denial of Long-Term Disability Benefits

Defendant moves for summary judgment asserting that its decision is a reasonable determination of the facts based on evidence in the record and is supported by substantial evidence.  Plaintiff cross-moves for summary judgment arguing that Liberty's determination that plaintiff was not disabled was arbitrary and capricious in that it is an unreasonable interpretation of the record.

In making the eligibility determination a plan administrator is called on to weigh and balance conflicting medical evidence.  See e.g., Soron v. Liberty Life Assurance Co. of Boston, Civ. Act. No. 02-CV-1514, 2005 WL 1173076, *12 (N.D.N.Y.May 2, 2005).  Liberty's final determination credits the testimony of Dr. Davis, an independent and examining physician, the results of an FCE, and the conclusions of a reviewing doctor as opposed to the opinions of two treating physicians.

Though Dr. Davis acknowledged some level of lingering pain in plaintiff's condition, he opined that it was not severe enough to prevent him from working at a sedentary position.  The results of the independent FCE were the same: a limitation was acknowledged but it was not severe enough to prevent work in a sedentary position which provides for the opportunity for brief changes of position.  Dr. Brown found the treating

- 9 -

physician's opinions to be inconsistent with the objective testing performed and opined that plaintiff could work at his sedentary occupation. Liberty was called on to weigh this evidence against the findings of Dr. Marra and Dr. Singh.

Dr. Marra stated that plaintiff's disability was temporary and he was capable of sedentary work. He could not determine a return-to-work date as of early April 2003. At the time Liberty's determination was made, Dr. Marra's notes on the subject preceded the FCE on April 22, 2003 where plaintiff performed at a medium capacity.

Dr. Singh's report describes plaintiff's disability as a complex case of a moderate to severe disability. While it would be reasonable, perhaps a better interpretation altogether, to credit Dr. Singh's report and weigh it greater than others, that it not the standard applicable here. As plaintiff acknowledges, the Supreme Court made it clear in Black & Decker Disability Plan v. Nord, that the treating physician rule which requires administrators to give special deference to a claimant's treating physician, while applicable in Social Security benefits determinations, does not apply in ERISA cases. 538 U.S. 822, 834 (2003).

Taken together, the report of an independent medical examiner, the FCE, and the opinion of a consulting physician, constitute substantial evidence upon which to based a finding as to disability. While plaintiff's interpretation of the record would certainly be reasonable, even preferable, Liberty's balancing of the evidence does not fall "so far outside the range of its discretion as to constitute arbitrary and capricious decisionmaking that it was without reason, unsupported by substantial evidence or erroneous as a matter of law." Todd v. AETNA Health Plans, 31 Fed.Appx. 13, *14 (2d Cir. 2002) (quotations omitted.) Defendant's motion for summary judgment will be granted and plaintiff's cross-motion will be

denied.

## IV. CONCLUSION

Liberty's reliance on the opinion of an independent and examining physician, the FCE, and its consulting physician as opposed to opinions of plaintiff's treating physicians in making its determination to deny plaintiff long-term disability benefits was not arbitrary and capricious.

Therefore it is

ORDERED that

(1) Defendant's motion for summary judgment is GRANTED;

(2) Plaintiff's cross-motion for summary judgment is DENIED; and

(3) The complaint is DISMISSED in its entirety.

The Clerk of the Court is directed to enter judgment accordingly.

IT IS SO ORDERED.

_____
David N. Hurd
District Judge

Dated: December 22, 2005
Utica, New York.